AARON M. CLEFTON, Esq. (SBN 318680)
CLEFTON DISABILITY LAW
2601 Blanding Ave, Suite C, #336
Alameda, CA 94501
Telephone: (510) 832-5001
aaron@cleftonlaw.com

Attorneys for Plaintiff
DEEP PATEL

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEEP PATEL<br><br>Plaintiff,<br><br>v.<br><br>WHISKY HOTEL LLC,<br><br>Defendant. | CASE NO. 2:26-cv-9864<br>Civil Rights<br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**<br><br>**1. Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>**2. Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br>**3. Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff DEEP PATEL complains of Defendant WHISKY HOTEL LLC, and allege as follows:

1. **PREFATORY:** Plaintiff is not a high frequency litigant and this is his first ADA action. This case does not involve any architectural barriers, only service dog denial claims. Plaintiff's law firm has represented over 150 unique plaintiffs, the vast majority of whom have filed less than four ADA cases in their lifetimes. Plaintiff's counsel is not a high frequency litigant firm under state law.

2. **INTRODUCTION:** Contrary to federal and State access laws, Defendant charged disabled Plaintiff an extra $75 to stay at its hotel due to the

presence of his service dog. Plaintiff made a reservation to stay at Whisky Hotel located at 1717 Wilcox Ave Los Angeles, California 90028, for the nights of July 29, 2026, and July 30, 2026, through booking.com. He was traveling to the Los Angeles area with his wife and young daughter to go to Universal Studios to celebrate his daughter's birthday. Plaintiff informed Defendant that he would be traveling with a service dog prior to arriving at the property to check-in, and Defendant had not indicated that there would be any issue.

3. When Plaintiff arrived for check-in at the hotel, Plaintiff again informed Defendant's employee at the check-in desk that he was traveling with his service animal. Defendant's employee told Plaintiff to make sure that his service dog was wearing a red collar or vest identifying him as a service dog or he would be charged by Defendant for a pet fee.

4. Plaintiff was surprised by Defendant's employee's statement as he knew that service dogs are not required by law to wear any items identifying them as service dogs, so he just took his room keys and went back to his vehicle to get his family. As Plaintiff and his service dog walked through the lobby to the elevator, he felt like Defendant's employees were staring at him in a strange manner. After he had settled his family in the room, Plaintiff sent a message to Defendant, through booking.com, stating that service dogs are not required to wear a special collar or vest identifying them as service dogs in order to accompany their handlers in public accommodations. Defendant responded Plaintiff was correct and that they do not "paperwork or vest" for service animals at Whisky Hotel.

5. Plaintiff and his family had a pleasant stay at Whisky Hotel and enjoyed celebrating their daughter's birthday at Universal Studios. They checked out of the hotel on July 31, 2026, and began their drive back to their home, when Plaintiff was notified that an extra $75 had been charged to their credit card by Defendant without explanation. Plaintiff immediately called to inquire why he had been charged an extra $75. Defendant informed him that they had charged him

because he had been accompanied by a dog. Plaintiff immediately explained that his dog is a service dog and therefore should be allowed to accompany him without being charged a pet fee. Defendant then countered that actually the $75 was a deposit that would be refunded in 7 to 10 business days. Defendant explained that they used the deposit to notify housekeeping that a dog had been staying in the room. However, Defendant's explanation did not make sense because Plaintiff had not been charged this fee until *after* he had checked out of the hotel. It was unclear to Plaintiff that Defendant would have refunded him the $75 fee if he had not called to complain about it. Further, not having that extra $75 for their drive home was a significant financial hardship for Plaintiff and his family. Finally, had there been damage alleged to have happened to the room, Plaintiff would have no way of knowing or verifying the allegations since it was charged after he left.

6. The Defendant's decision to charge extra fees or deposits and harass patrons who use service dogs contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals." In relevant part, the guidance states:

> When it is not obvious what service an animal provides, only limited inquiries are allowed. Staff may ask two questions: (1) is the dog a service animal required because of a disability, and (2) what work or task has the dog been trained to perform. Staff cannot ask about the person's disability, require medical documentation, require a special identification card or training documentation for the dog, or ask that the dog demonstrate its ability to perform the work or task.
>
> …
>
> - A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a

service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

…

- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/. Similarly, the DOJ's FAQs regarding Services Animals mirror these requirements specifically in the hotel context:

**Q8. Do service animals have to wear a vest or patch or special harness identifying them as service animals?**

A. No. The ADA does not require service animals to wear a vest, ID tag, or specific harness.

…

**Q12. Can hotels charge a cleaning fee for guests who have service animals**?

A. No. Hotels are not permitted to charge guests for cleaning the hair or dander shed by a service animal. However, if a guest's service animal causes damages to a guest room, a hotel is permitted to charge the same fee for damages as charged to other guests.

https://www.ada.gov/resources/service-animals-faqs/

7. The Los Angeles area is a convenient vacation destination for Plaintiff and his family as they can drive from their home in the Bay Area. Plaintiff also often has the need or desire to stay in hotels in the Los Angeles area. Whisky Hotel is convenient for Plaintiff due to the room rate, location, and amenities. Plaintiff intends to return to Whisky Hotel in the future but cannot do so until the policies of

the hotel are made accessible to disabled individuals who use service dogs, including revision of their service dog policies and necessary employee training and/or re-training. Plaintiff has brought this lawsuit to force Defendant to change their discriminatory and illegal policies and compensate him for harassing him and charging him an extra $75 to stay at the hotel because Plaintiff is a disabled person who needs the assistance of his qualified service dog. Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at Whisky Hotel.

8. **JURISDICTION:** This Court has jurisdiction of this action pursuant to 28 USC sections 1331 and 1343. This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

9. **VENUE:** Venue is proper in this court pursuant to 28 USC section 1391(b) and is proper because the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

10. **PARTIES:** Plaintiff Deep Patel is a "qualified" disabled person who uses the assistance of a service dog to ameliorate his disability. Plaintiff served in the United States Marine Corps for four years before he was honorably discharged as a decorated veteran. During his military service, Plaintiff experienced multiple tragedies and unexpected deaths of family and friends which resulted in diagnoses of posttraumatic stress disorder (PTSD) and depressive anxiety disorder. The VA has found Plaintiff to be 100% disabled as a result of these conditions. Due to these conditions, Plaintiff experiences frequent panic attacks, issues with concentration, and feelings of being overwhelmed. Plaintiff's disability significantly impacts his ability to concentrate, work, and maintain relationships.

11. Plaintiff relies upon his service dog, pitbull and lab mix named "Bently", to assist him with certain tasks to ameliorate his disability. These include interrupting and alerting Plaintiff when he is experiencing a panic attack. Bently is

trained to position herself in front of Plaintiff when he is experiencing anxiety symptoms and nudge Plaintiff's leg until he focuses his attention on her. This brings Plaintiff's attention to the present and allows him to focus on what is happening in the moment rather than on his psychiatric symptoms. All of these tasks Plaintiff has trained Bently to do. They are not behaviors that Bently has engaged in naturally or without training. Bently was individually trained to be a service dog by Plaintiff, and they have been working together for almost seven years. Additionally, Plaintiff continues to reinforce the training with Bently daily. Plaintiff is a qualified person with a disability as defined under federal and state law who is substantially limited in the major life activities of interacting with other people, concentrating and working. 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

12. Defendant WHISKY HOTEL LLC, is and was at all times relevant to this Complaint the owner, operator, lessor and/or lessee of the subject business located at 1717 Wilcox Ave, Los Angeles, California 90028, known as the Whisky Hotel.

13. Whisky Hotel is a place of "public accommodation" and a "business establishment" subject to the requirements *inter alia* of the categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq*.

14. **FACTUAL STATEMENT:** Plaintiff Deep Patel has been working with his service dog Bently for almost seven years. Bently is a lab and pitbull mix who has been individually trained to be a service dog. Plaintiff has trained and continues to train Bently to serve his specific needs throughout their relationship. Bently is specifically trained to assist Plaintiff by interrupting anxiety attacks and staying close to Plaintiff until he is calm.

15. Plaintiff got Bently as a puppy, and they have been training together since. Plaintiff used online resources including those many You-Tube videos

specific to training anxiety alert dogs such as those produced by the Service Dog Training Institute regarding training of psychiatric service dogs in order to assist him in training Bently to perform her tasks. Plaintiff used praise as well as voice and treat reward training techniques to train Bently. For example, Plaintiff trained her to interrupt anxiety attacks by pretending to exhibit the signs of anxiety and rewarding her with special treats and praise when Bently came to him and interrupted him, nudged him, and stayed close to him. Now Bently performs the task when Plaintiff is having an anxiety attack without the need for the special treat.

16. Bently is a working dog; she is not a pet. Plaintiff and Bently have trained extensively together, and they supplement that training daily. Plaintiff takes Bently almost everywhere with him in public. It is important they stay together as much as possible because (a) Bently provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond. With few exceptions, where Plaintiff goes, Bently goes.

17. In the summer of 2026, Plaintiff and his wife planned a trip to Universal Studios in Los Angeles, California, to celebrate their daughter's birthday. In connection with that trip, Plaintiff made a reservation at the Whisky Hotel for the nights of July 29 and July 30, 2026, through the online booking platform Booking.com.

18. On July 25, 2026, prior to arrival, Plaintiff sent Defendant a message through Booking.com stating that he would be "traveling with a service animal." Defendant responded the same day, stating: "Thank you for informing us about traveling with a service animal. Whisky Hotel is pet-friendly, and your service animal is very welcome."

19. On July 29, 2026, Plaintiff and his family drove from their home in the San Francisco Bay Area to Los Angeles. Upon arrival at the Whisky Hotel, Plaintiff entered the lobby to check in. During check-in, Plaintiff again informed the front

desk employee that he was traveling with his service dog. Defendant's front desk employee told Plaintiff that his dog needed to wear a red collar or a service dog vest to identify it as a service animal or he could be charged an extra fee. Plaintiff was surprised by this statement as it is contrary to the ADA to require service animal to wear anything identifying them as a service animal, but he simply responded "okay." The employee then provided Plaintiff with his room key.

20. After checking in, Plaintiff returned to his vehicle to retrieve his wife, his daughter, and his service dog, Bently. Plaintiff and his family then walked together through the Hotel lobby to the elevator. While doing so, Plaintiff observed Hotel staff members looking back and forth between him and Bently multiple times. He felt awkward and singled out for having a service dog by Defendant's staff.

21. After arriving in his room, Plaintiff sent Defendant a message through Booking.com describing his interaction with the front desk employee and the manner in which staff had looked at him and his service dog while he crossed the lobby. Plaintiff stated that, while he did not believe there was "any bad intent," he wanted Defendant to be aware that under the Americans with Disabilities Act ("ADA"), service animals are not required to wear a vest, collar, identification, or other specific marking. Defendant responded to Plaintiff that it does "not require . . . paperwork or vest," but stating that, "as a courtesy," Defendant asks guests not to leave the dog alone in the room "while it is servicing" the guest and his family.

22. Plaintiff and his family remained at the Hotel for the reserved two nights and celebrated his daughter's birthday, including a visit to Universal Studios. On July 31, 2026, Plaintiff and his family checked out of the Hotel and began the drive back to their home in the Bay Area.

23. While en route, Plaintiff received an alert that Defendant had charged an additional, unexplained fee to his credit card, separate from the standard incidental deposit authorization placed at check-in.

24. Concerned about the unexplained charge, Plaintiff called the Hotel to request an explanation. A Hotel employee explained that the $75 charge was a "deposit" applied because a dog had stayed in the room, regardless of whether the dog was a service animal, and stated that the deposit would be refunded within approximately seven to ten business days. Plaintiff subsequently obtained and reviewed his folio, which listed the $75 charge as "Miscellaneous."

25. Plaintiff called the Hotel a second time, with his wife present and listening on speakerphone, and again asked the employee to explain the charge. The employee reiterated that the additional charge applied because a dog had been in the room. She explained that the charge was used to notify housekeeping that a dog had stayed in the room and it applied equally to pets and service dogs. Defendant's employee also reiterated that the charge would be refunded but that it would take seven to ten business days to receive the refund.

26. Defendant's website separately advertises a "pet fee" of $75 for guests staying with pets — the same amount Defendant charged Plaintiff for staying with Bently, notwithstanding that Bently is a trained service animal for which no pet fee, deposit, or surcharge may lawfully be imposed. Alternatively, Defendant had a policy or practice of staff identifying service dogs by their accoutrement, and Bently did not have the proper identification. Therefore, Defendant charged the pet fee despite machinations to the contrary by text. Defendant failing to ask the two lawful questions about Bently's status as a service dog and tasks he is trained to do, and instead relying on visual cues, only supports Plaintiff's experience of discrimination for having been baselessly charged the pet fee.

27. Plaintiff's family is on a strict budget, and they had not budgeted for an additional, dog-related charge after having informed Defendant in advance and at check-in that Bently is a service animal, during this vacation. The delay of seven to ten business days before any refund created financial hardship for Plaintiff and his family, who rely on Plaintiff's disability benefits as income. Moreover, non-

disabled guests without dogs are not charged this fee. It remains unclear whether Defendant would have refunded the charge, or disclosed it at all, had Plaintiff not personally identified and inquired about it following check-out. Plaintiff did not receive the $75 back until August 3, 2026, after he and his family had returned from their trip. This meant he was without his money for four days after he was charged on July 31, 2026, something non-disabled guests did not have to experience.

28. Plaintiff wishes to return to the Whisky Hotel when he has the need or want for hotel accommodation in the Los Angeles area, but only *after* Defendant has implemented proper service animal policies and training of their staff. Plaintiff is deterred from returning to the hotel until these policies and training are in place.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 USC §§ 12101 *et seq*.)**

29. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 28 above, and incorporates them herein by reference as if separately repled hereafter.

30. In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. § 12101(a).

31. The ADA provides, "No individual shall be discriminated against on

the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182.

32. Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

33. Whisky Hotel is a public accommodation within the meaning of Title III of the ADA. 42 U.S.C. § 12181(7)(A).

34. The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

35. Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go." ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

36. Defendant has a policy and practice of charging guests with service animals an extra nightly fee at the Whisky Hotel. This is contrary to the ADA. The Department of Justice issued guidance on the subject of "Service Animals." In relevant part, the guidance states:

> When it is not obvious what service an animal provides, only limited

inquiries are allowed. Staff may ask two questions: (1) is the dog a service animal required because of a disability, and (2) what work or task has the dog been trained to perform. Staff cannot ask about the person's disability, require medical documentation, require a special identification card or training documentation for the dog, or ask that the dog demonstrate its ability to perform the work or task.

…

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

…

- People with disabilities who use service animals cannot be isolated from other patrons, treated less favorably than other patrons, or charged fees that are not charged to other patrons without animals.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/. Similarly, the DOJ's FAQs regarding Services Animals mirror these requirements specifically in the hotel context:

**Q8. Do service animals have to wear a vest or patch or special harness identifying them as service animals?**

A. No. The ADA does not require service animals to wear a vest, ID tag, or specific harness.

…

**Q12. Can hotels charge a cleaning fee for guests who have service**

**animals**?

A. No. Hotels are not permitted to charge guests for cleaning the hair or dander shed by a service animal. However, if a guest's service animal causes damages to a guest room, a hotel is permitted to charge the same fee for damages as charged to other guests.

https://www.ada.gov/resources/service-animals-faqs/.

37. On information and belief, as of the date of Plaintiff's most recent visit to Whisky Hotel on or about July 29-31, 2026, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of Plaintiff's disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

38. In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

> It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

39. As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*). The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes any

"hotel, motel or other place of lodging." 42 USC § 12181(7)(A).

40. The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182. The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendant set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

41. The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA. As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law. In the event that removal of any barrier is found to be "not readily achievable," Defendant still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

42. On information and belief, as of the dates of Plaintiff's encounter at the premises and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

43. Defendant's actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from patronizing the Whisky Hotel and discriminated and continue to discriminate against Plaintiff on the basis of his status as a disabled person who uses a service dog, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA. 42 U.S.C. § 12182.

44. Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections

12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of his disabilities in violation of sections 12182 and 12183. On information and belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters. Pursuant to section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title. Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

45. Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990. Plaintiff is a qualified disabled person for purposes of § 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing he will be subjected to such discrimination each time that he may use the property and premises, or attempt to patronize the Whisky Hotel, in light of Defendant's policies barriers.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## SECOND CAUSE OF ACTION: VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)

46. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 45 of this Complaint and incorporates them herein as if separately re-pleaded.

47. At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

48. California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

49. Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

50. Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52. Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

51. The actions and omissions of Defendant as herein alleged constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs within the meaning of California Civil Code sections 51 and 52. As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory and compensatory to Plaintiff, according to proof.

52. **FEES AND COSTS:** As a result of Defendant's acts, omissions and

conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52. Additionally, Plaintiff's lawsuit is intended to require that Defendant make their facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

53. Plaintiff suffered damages as above-described as a result of Defendant's violations.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**THIRD CAUSE OF ACTION:
DAMAGES AND INJUNCTIVE RELIEF
FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC
FACILITIES IN A PUBLIC ACCOMMODATION
(Civil Code §§ 54 *et seq.*)**

54. Plaintiff repleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 53 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

55. Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places." Civil Code § 54(a).

56. Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging places of accommodation, amusement or resort, or other places to which the general public is invited." Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service

dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

57. Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

58. Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out their functions in assisting a disabled person."

59. Whisky Hotel is a public accommodation within the meaning of the CDPA. On information and belief, Defendant is the owner, operator, lessor or lessee of the public accommodation.

60. Defendant made the decision to knowingly and willfully exclude Plaintiff and his service dog from their public accommodation and thereby deny Plaintiff's right of entrance into their place of business with his service dog. As a result of that decision Plaintiff has faced the continuing discrimination of being essentially barred from entering this public accommodation and place of business based upon Defendant's illegal fees for Plaintiff's legally protected use of his service dog. Plaintiff has continued to suffer denial of access to these facilities and faces the prospect of unpleasant and discriminatory treatment should they attempt to return to these facilities. Plaintiff is unable to return to the Whisky Hotel until he receives the protection of this Court's injunctive relief, and he has continued to suffer discrimination on a daily basis since July 29-31, 2026, all to his statutory

damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3.

61. **INJUNCTIVE RELIEF:** Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled, who require the assistance of service animals from full and equal access to these public facilities. Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against them on the sole basis that Plaintiff is a person with disabilities who requires the assistance of a service animal.

62. Plaintiff wishes to return to patronize the Whisky Hotel but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause him further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continues, to achieve equal access to and use of these public facilities. Therefore, Plaintiff cannot return to patronize the Whisky Hotel and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled individuals who require the assistance of a service animal.

63. The acts of Defendant have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court. Plaintiff seeks injunctive relief as to Defendant's inaccessible policies. As to the Defendant that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

64. Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to

Plaintiff in the ways complained of and to require Defendant to comply forthwith with the applicable statutory requirements relating to access for disabled persons. Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws. Plaintiff further request that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

65. **DAMAGES:** As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of his civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to his damages per Civil Code section 54.3, including general and statutory damages, as hereinafter stated. Defendant's actions and omissions to act constitute discrimination against Plaintiff on the basis that he was and is disabled and unable, because of the policy barriers created and/or maintained by the Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons. The violations have deterred Plaintiff from returning to attempt to patronize the Whisky Hotel and will continue to cause him damages each day these barriers to access and policy barriers continue to be present.

66. Although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional. Defendant was aware and/or was made aware of their duties to refrain from establishing discriminatory policies against disabled persons, prior to the filing of this complaint. Defendant's establishment of their discriminatory policy to deny and restrict entry to persons with service dogs,

and their implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for Plaintiff's rights and safety.

67. **FEES AND COSTS:** As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions of Civil Code sections 54.3 and 55. Additionally, Plaintiff's lawsuit is intended to require that Defendant make their facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

68. Plaintiff suffered damages as above described as a result of Defendant's violations. Damages are ongoing based on his deterrence from returning to the Whisky Hotel.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## PRAYER

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendant as alleged herein, unless Plaintiff is granted the relief they request. Plaintiff and Defendant have an actual controversy and opposing legal positions as to Defendant's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Deep Patel prays for judgment and the following specific relief against Defendant:

1. An order enjoining Defendant, their agents, officials, employees, and all persons acting in concert with them:

a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

b. To modify their policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that his service dog will not be excluded nor sill he be charged any additional fees or deposits for his service animal should he desire to enter and use the services of the Whisky Hotel;

c. Advise Plaintiff that he is welcome to come back to enter and use the services of the Whisky Hotel;

d. That the Court issue preliminary and permanent injunction directing Defendant as current owner, operator, lessor, and/or lessee and/or their agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights and needs;

e. An order retaining jurisdiction of this case until Defendant has fully complied with the orders of this Court, and there is a reasonable

assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2. An award to Plaintiff of statutory, actual, general, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3. An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

4. An award of prejudgment interest pursuant to Civil Code § 3291;

5. Interest on monetary awards as permitted by law; and

6. Grant such other and further relief as this Court may deem just and proper.

Date: September 2, 2026

CLEFTON DISABILITY LAW

*/s/ Aaron M. Clefton*
By AARON M. CLEFTON, Esq.
Attorneys for Plaintiff
DEEP PATEL

**JURY DEMAND**

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: September 2, 2026

CLEFTON DISABILITY LAW

*/s/ Aaron M. Clefton*
By AARON M. CLEFTON, Esq.
Attorneys for Plaintiff
DEEP PATEL